

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY J. SCANDAGLIA AND WILLIAM J. )
    RYAN, )
                                                    )
         Plaintiffs-Counter Defendants)
                                                    )     No. 09 C 2121
v.                                               )
                                               )     The Honorable William J. Hibbler
TRANSUNION INTERACTIVE, INC., )
       Defendant-Counter Plaintiff. )

### MEMORANDUM OPINION AND ORDER

Gregory Scandaglia and William Ryan (Plaintiffs), named partners of their law firm, sued TransUnion Interactive, Inc. (TUI or Defendant) for infringing upon their Federally Registered service mark, "Always Know Where You Stand." Discovery has now bogged down into petty squabbles, and the parties trade insults in an unbecoming display of rancor. Nonetheless, the Court has waded through the 267 pages of documents in support of or opposition to the discovery motion.

Generally, a party may obtain discovery on any matter that is relevant and not privileged. Fed. R. Civ. P. 26(b)(1); *Semien v. Life Ins. Co. of North America*, 436 F.3d. 805, 813 (7th Cir. 2006). This liberal discovery policy does not mean that a party has an absolute right to everything that is relevant to the case. *Lindell v. McCaughtry*, 115 Fed. Appx. 872, 867 (7th Cir. 2004). Instead, district courts have broad discretion to limit discovery, particularly when it is unreasonably cumulative or duplicative, unreasonably burdensome, or can be obtained from another less burdensome source. Fed. R. Civ. P. 26(b)(2)(C); *Semien*, 436 F.3d at 813.

With these principles in mind, the Court turns to the disputed discovery requests.

A.  *Document Requests 9, 10, and 21*

In Document Request 9, Plaintiffs ask TUI to produce "[a]ll documents that relate to the revenues received by Defendant since the inception of the Always Know Where You Stand ad campaign." Document Request 10 similarly seeks documents related to TUI's profits. And Document Request 21 seeks "[a]ll documents that relate to the dollar volume of advertising promotional expenditures made in connection with the Always Know Where You Stand advertising campaign." In each of its responses to these requests, TUI replies that upon entry of a protective order it will produce documents "sufficient" to identify its revenue, profits, and advertising expenditures. In their motion to compel, the Plaintiffs argue that TUI may not decide which documents are responsive to its request and must produce "all" documents. TUI raises several arguments in response.

First, TUI argues that such documents are not relevant. According to TUI, in order to recover damages, the Plaintiffs must demonstrate "**actual** confusion." (emphasis in original). TUI suggests that the Plaintiffs, however, have "**admitted** that it [sic] has no evidence of *consumer* confusion from TUI's advertisements at issue." (bold in original; italics added). TUI grossly misrepresents both the facts and the law. With regard to the alleged admission, TUI points to the Plaintiffs' responses to its Interrogatories and Requests to admit. In response to an interrogatory inquiring about confusion, the Plaintiffs respond that "they have *personally* experienced no confusion." (emphasis added). In response to a similar request to admit, the Plaintiffs admit that "they have not *personally* experienced any actual confusion." (emphasis added). The mere fact that the Plaintiffs' themselves are not confused by TUI's advertisement does not mean that Plaintiffs do not have (or will not discover) that *consumers* were confused by TUI's advertisement. TUI's representation to the contrary lacks any reasonable basis

2

in fact and arguably runs afoul of Rule 11. Further, TUI blatantly misrepresents the law. TUI cites *Web Printing Control Co. v. Oxy-Dry Corp* to suggest that the Lanham Act requires a plaintiff to show **actual** confusion among consumers. (emphasis in original). *Web Printing*, in fact, states precisely the opposite. *Web Printing Control Co.*, 906 F.2d 1202, 1203-1205 (7th Cir. 1990). Instead, the Lanham Act requires a plaintiff to demonstrate that confusion is likely. *Id.* Counsel for TUI seems to believe that gratuitous use of bold text substitutes for accurate and fair representation of the facts and the law. Counsel for TUI is cautioned to be more forthright in its representations of both fact and law. Lawsuits are not shell games in which counsel should try to hide the peanut from the Court's eye. The Court will tolerate no further misrepresentation of fact or law to bolster an argument.

TUI also suggests that it already has produced documents sufficient to identify its revenue, profits, and advertising expenditures. The Plaintiffs do not dispute that TUI has produced such documents but instead insist that TUI should be compelled to produce *all* documents related to revenue, profits, and advertising expenditures, and should not be allowed to "hand-pick" which documents it produces. The Plaintiffs suggests that in doing so TUI is "hid[ing] the ball," an approach criticized by other courts. *See Howard v. Sweetheart Cup Co.*, No. 00 C 648, 2001 WL 721765, at *2 (N.D. Ill. Jun. 27, 2001). The Court disagrees.

In *Howard*, counsel responded that it would produce "other" responsive documents. Counsel's use of 'other' left both the Court and the other party unable to ascertain what documents would be produced and what documents would be withheld. That is not the case here. TUI promised to produce documents *sufficient* to identify its revenue, profits, and advertising expenditures.[1] If TUI indeed has

---

[1] Throughout its Response to Document Requests, whenever Plaintiffs request documents "since the inception" of the advertising campaign, TUI identifies "December 18, 2009" as the inception of the campaign. In its Response to Interrogatories, however, TUI responds that it has

produced documents sufficient to identify its revenue, profits and expenditures, then further discovery is duplicative and unnecessary.

The Plaintiffs imply that TUI might hide its true revenue, profits, and advertising expenditures and that it will not have an opportunity to review TUI's accounting or otherwise challenge their figures. The Plaintiffs, however, do not provide the Court any reason to believe that the documents provided by TUI are somehow incomplete or inaccurate. Rule 11 imposes obligations on counsel as officers of the Court, and the Court presumes that those officers act in accordance with those obligations. If the Plaintiffs have some reason to believe that the documents produced by TUI do not accurately reflect their revenue, profits or advertising expenditures then the Court not only will reconsider its position but also consider whether counsel has violated their Rule 11 obligations. The Court DENIES Plaintiffs' motion to compel further production related to document request number 9, 10 and 21.

*B.     Document Request 14*

In Document Request 14, Plaintiffs seek "[a]ll documents that relate to the products or services offered by TransUnion on the website." TUI suggests that its business is its website and therefore interprets this document request to seek all documents related to TUI's business. Consequently, TUI argues, the request seeks "every single piece of paper at every TUI office from every TUI employee." TUI's interpretation of the request, however, is absurd. The request does not seek documents related to its website; it seeks documents related to *products or services* offered on the website. As the Plaintiffs explain, there are many categories of documents that do not relate to products or services offered on the website.

---

used the phrase "always know where you stand, especially with your credit" since December 18, 2008. The Court presumes that TUI's statements throughout its Response to Document Requests are mere typographic errors.

In addition to its hyperbolic and unreasonable objection, TUI claims it has produced documents that "identify and describe the products [it] offers on its ... website." But the document requests asks for more than a description of the products offered on the website. It asks for documents that relate to those products. The Court finds this request to be reasonably calculated to lead to admissible evidence and GRANTS Plaintiffs' request to compel further production in response to Document Request 14.

C.  *Document Request 18*

In Document Request 18, Plaintiffs seek "[a]ll documents that relate to sales, shipment and delivery of any products and services offered on the Website since the inception of the Always Know Where You Stand advertising campaign, including but not limited to, all invoices, purchase orders, shipping orders, bills of lading and other documents and things evidencing the customers receiving the products or services . . . ."

TUI objects that this request necessarily would contain confidential consumer information. Indeed, turning over "all documents" related to the delivery of products, including invoices, purchase orders, and other similar documents, would reveal far more about TUI's customers than is necessary. The Plaintiffs respond that they have "repeatedly agreed to limit this request to all documents regarding its aggregate sales and orders on TrueCredit.com," citing to an email sent by their counsel. The email, however, agrees to no such limitation. The court finds two references to Document Request 18 in the email. The first reads: "[w]e have repeatedly informed you that TransUnion cannot pick and choose the documents it wants to produce, but must instead produce all documents responsive to our Requests. If you are insisting on cherry-picking which documents you want to produce, we will raise the issue with the Court." The second reads: "[a]s noted above, please confirm that by "documents" you mean TransUnion is producing all documents." Quite contrary to the Plaintiffs' representation that they

5

*repeatedly* agreed to limit their discovery request, the Court finds instead that they *repeatedly* insisted on adhering to an overbroad and unduly burdensome request. Just as the Court chastised counsel for TUI for playing fast and loose with the facts, so too does the Court caution Plaintiffs' counsel to be more careful with their representation of the facts.

TUI responds that it has provided "information about the products and services it provides, its revenues and its profits . . . [and] the number of orders for products on its web site and the revenue and profits for these products." The Plaintiffs do not contest this representation and instead insist that TUI has not turned over "all documents." The Court, however, fails to see how the information provided by TUI is not responsive to Plaintiffs' request to produce documents regarding its "aggregate sales and orders on TrueCredit.com." The Court finds that further response to Document Request 18 would be cumulative and therefore DENIES the Plaintiffs' request for further production on this request.

D.   *Document Request 17*

Document Request 17 seeks "[a]ll documents that relate to the identity and types and classes of consumers to whom, and all markets and channels of trade through which, TransUnion's products and services are to be or have been marketed or sold." The Court construes this compound request to seek two types of information: 1) information regarding the *identity* of TUI's consumers, namely documents that indicate the individuals who are part of TUI's customer base; 2) information regarding the *types* of consumers that TUI targets, namely documents related to the generalized consumer in TUI's customer base. Before discussing the parties' dispute, the Court comments that such compound document requests are bound to produce difficulties, and that the Plaintiffs would have been better served in separating their request to make more clear the type of information they seek.

TUI objects to the request for the *identity* of its consumers on a number of grounds. TUI first argues that such information is not relevant because the Plaintiffs' legal practice focuses on "sophisticated clients" whereas TUI markets its website services to individual consumers. Therefore, TUI argues, that the information is not relevant to demonstrate an overlap of customers or actual confusion. The Plaintiffs, however, argue that they represent individuals in addition to "sophisticated clients." The ultimate concern in a trademark case is the tendency of the mark to "indicate the origin of the product in the eyes of the purchasing public." *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004). Whether the parties' customer base overlaps helps to frame the issue of whether those customers are likely to be confused by the allegedly infringing mark (customers can be surveyed, for example). *See Autotech Technologies Ltd. P'Ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 441 (N.D. Ill. 2006). The Court finds the document request does seek relevant information.

TUI next suggests, albeit obliquely, that the Plaintiffs' request is overbroad and unduly burdensome. The Court agrees. The Plaintiffs' request seeks information about the "identity . . . of consumers to whom . . . TransUnion's products and services are to be or have been marketed or sold." By its plain language, this request seeks the identity of what likely would be nearly every person over the age of eighteen in the United States. The request speaks in the future tense, so that any person who might purchase a TUI product or service is included. The request also speaks in terms of advertising and sales. Finally, Plaintiffs put absolutely no restrictions on the geographic or temporal scope of their request. If Plaintiffs seek information about TUI's customer base in order to assess the potential confusion of those customers, it need not have access to the identity of every single customer. It can do so from a sample. In short, the request is overbroad and compliance with it is unduly burdensome. Nonetheless, because the Court finds such information to be relevant, the Court DENIES the request

without prejudice and instructs the parties to engage in further discussions to resolve their dispute consistent with this order.

As noted earlier, the Court also construes Document Request 17 to seek generalized information about the classes of consumers that TUI targets. TUI responds that "it does not have documents that identify classes of customers, because its potential customers and actual customers include consumers over the age of eighteen who want access to their consumer credit information." The Court finds TUI's representation difficult to swallow. Every business surely would endeavor to have a customer base broadly defined as "everyone." Nonetheless, the Court is hard-pressed to imagine that TUI does not target certain classes of consumers. Perhaps, for example, it markets its services more heavily on some web-sites than others. Perhaps it has conducted research to determine what classes of individuals might be most easily persuaded to purchase its products. The Court GRANTS the Plaintiffs' motion to compel and instructs Defendants to turnover documents in its possession that relate to the types or classes of customers.

E.  *Document Request 11*

In Document Request 11, the Plaintiffs ask for everything, including the kitchen sink. The Plaintiffs seek all documents that relate to the Complaint, Answer, Counterclaim or Affirmative Defenses. This document request, as Plaintiffs themselves seem to acknowledge, is ridiculously overbroad. This type of request never should have been brought to the Court's attention and serves purely to waste judicial resources. Still, Plaintiffs persist in suggesting that "[t]here exists the real risk that TUI is holding back documents that it intends to use in depositions or at trial." The Court, however, will cross that bridge if it ever comes to it. It will not engage in rampant speculation that TUI

must be withholding documents merely because the Plaintiffs say so. The Court DENIES Plaintiffs' request to compel further production responsive to Document Request 11.

F.  *Interrogatory 2*

In their second interrogatory, the Plaintiffs ask TUI to explain the factual and legal basis of any denial of a request to admit. TUI objects to this interrogatory, asserting that it is compound and thus Plaintiffs would exceed the allowable number of interrogatories. The purpose of requests to admit is to narrow the scope of issues for trial. *Loudermilk v. Best Pallet Co., LLC*, 08 C 6869, 2009 WL 3272429, at * 1 (N.D. Ill. Oct. 8, 2009). Having denied so many of the Plaintiffs' Requests to Admit, TUI has placed these issues in dispute. The Plaintiffs certainly are entitled to discovery regarding the basis for TUI's denials, and conducting this discovery through interrogatory rather than through deposition less costly and time consuming for all parties involved. This is not a case in which a compound interrogatory produces confusion about the answers that a party seeks. *See, e.g., OCE-Business Sys., Inc. v. Dual Office Suppliers, Inc.* No. 87 C 8613, 1988 WL 37711, at * 1 (Apr. 21, 1988) (allowing interrogatories with multiple sub-paragraphs that were necessitated by nature of counterclaim). The Court finds that Interrogatory 2 does not contain "discrete subparts" and directs TUI to answer the interrogatory.

G.  *Interrogatory 3*

In Interrogatory 3, the Plaintiffs ask TUI to identify all persons who "are believed or known by you to have any knowledge concerning any of the issues involved in the action" and describe the subject matter of that knowledge. TUI asserts that it produced documents that identify persons who potentially have knowledge about the case and organizational charts to provide titles and departments. The Plaintiffs argue that TUI does not go far enough because the charts do not "identify which of those

individuals *actually* have knowledge of the issues in the lawsuit." (emphasis added). Of course, that is Plaintiffs own fault for crafting such an overbroad interrogatory that asked for a list of individuals that TUI *believed* to have knowledge. They did not, however, ask for the identity of those who *actually* had knowledge. The Court DENIES Plaintiffs' motion to compel further response to Interrogatory 3.

## H. Interrogatory 9

Finally, the Plaintiffs' Interrogatory 9 asks TUI to explain the legal and factual basis of its allegation that the Plaintiffs' mark constitutes generic wording. TUI contends that it has produced "hundreds of pages of uses of formatives of S&R's alleged mark for legal services and for other services," that provide the factual basis for its claim. It also contends that the Plaintiffs' interrogatory is an inappropriate contention interrogatory. Rule 33, however, expressly contemplates the use of contention interrogatories, *see* Fed. R. Civ. P. 33(a)(2), although generally they are deferred until discovery is near close, *see In re Northfield Laboratories, Inc. Sec. Litigation*, No. 06 C 1493, 2009 WL 4639678, at * 5 (N.D. Ill. Dec. 8, 2009). TUI makes no claim that such a request is premature, instead insisting both that its response is either complete or not required. The Plaintiffs, for their part, never explain why TUI's production of documents is not sufficient to answer the interrogatory. The Court finds that to the extent that TUI has produced documents that form the factual basis of its claim, it has provided a partial response to the interrogatory. Should TUI intend to rely on additional documents in support of this claim that it has yet to identify it remains under an obligation to supplement its responses, *see* Fed. R. Civ. P. 26(e)(1). Further, the Court instructs TUI that it must provide the Plaintiffs with a general statement of the legal basis on which its claim rests to complete its response to the interrogatory.

On a final note, the Court observes that this opinion now enters the eleventh page. Throughout its review of the parties' materials it finds that *both* parties have acted in bad faith in this discovery dispute and therefore denies Plaintiffs' request for attorneys fees. Both parties have obstinately drawn lines in the sand that have not been warranted: TUI asserting, generally, that Plaintiffs are entitled to virtually nothing; Plaintiffs asserting, generally, that they are entitled to virtually everything. The Court has committed substantial judicial resources to reviewing the parties' cumbersome materials and resolving a dispute that the parties should have been able to resolve themselves. Such resources have been diverted from resolving other claims. The Court hopes that in the future the parties will demonstrate a greater degree of professionalism and collegiality and make a good faith effort to resolve their disputes before consuming the Court's resources.

IT IS SO ORDERED.

1/21/10
Dated

Hon. William J. Hibbler
U.S. District Court