IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY J. SCANDAGLIA AND WILLIAM J. )
    RYAN, )
                                       )
    Plaintiffs-Counter Defendants)
                                       )        No. 09 C 2121
v. )
                                       )        The Honorable William J. Hibbler
                                       )
TRANSUNION INTERACTIVE, INC., )
                                       )
    Defendant-Counter Plaintiff. )

## MEMORANDUM OPINION AND ORDER

Gregory Scandaglia and William Ryan (Plaintiffs), named partners of their law firm, sued TransUnion Interactive, Inc. (Transunion or Defendant) for infringing upon their Federally Registered service mark, "Always Know Where You Stand." Transunion moves for summary judgment on the Plaintiffs' claim and also on its counterclaim.

### I. Factual Background

The Plaintiffs own a federal trademark registration of the phrase "ALWAYS KNOW WHERE YOU STAND" for legal services. U.S. Registration No. 3,145,547. At the time, the Plaintiffs filed their Complaint they had registered the mark within the past three years. (Def. 56.1(a) Statement ¶ 5). The Plaintiffs used the registered mark on their website and in marketing materials mailed to current and prospective clients. (Smith Dec., Exs. B, D). On its website, the Plaintiffs place the mark prominently beneath their firm's name on practically every page of the site. (Smith Dec., Ex. B). Plaintiffs have not, however, used the mark in any television, radio, or third-party commercial web-site

1

advertisements. (Def. 56.1(a) Statement ¶ 12). Nor have the Plaintiffs used the mark on their letterhead or business cards. (Def. 56.1(a) Statement ¶ 13).

Despite the Plaintiffs' registration, numerous other attorneys used the phrase "always know where you stand," to promote their services on the internet. (Wilbur Dec., Exs. 1-96). In many instances, the attorneys used the phrase "always know where you stand," in an introductory paragraph advertising the firm's services or in a bullet-point highlighting reasons to select that particular attorney. (Wilbur Dec., Exs. 1-96). In addition, numerous companies have used the phrase "always know where you stand," in association with advertisements related to credit scores, credit reporting, and credit monitoring. (Wilbur Dec., Exs. 100-123). Still additional companies have used the phrase in reference to financial or real estate services. (Wilbur Dec., Exs., 124-133). Plaintiffs have not taken steps to enforce their rights in the mark against any of these parties. (Smith Dec., Ex. E).

Transunion has aired a series of advertisements on television and in video banner advertisements at the website YouTube.com that use the phrase "always know where you stand." (Duni Dec., Ex. E). In the advertisements a person unexpectedly trips, falls, or runs into something because he is not paying attention to where he is going. (Pl. Ex. 3). After the mishap, the advertisement presents a written message inside two text boxes. First, a green text box containing the words "always know where you stand" appears. That text box is followed immediately by a blue text box containing the words "especially with your credit." (Pl. Ex. 3). Both text boxes remain on the screen for several seconds,, along with Transunion's website address. (Pl. Ex. 3). After the text boxes fade, the advertisement presents a second message, directing viewers to "fight the unexpected." (Pl. Ex. 3). During that portion of the advertisement, Transunion displays its own trademark, "truecredit." (Pl. Ex. 3).

## II. Standard of Review

2

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in its favor. Fed.R.Civ.P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir.2006); *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

### III. Analysis

The Lanham Act protects registered trademarks by prohibiting the use in commerce of reproductions, counterfeits, copies, or colorable imitations. 15 U.S.C. § 1114. To prevail on a Lanham Act claim, a plaintiff must establish that the mark is protectable and that the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Once a mark is registered, the Lanham Act affords a plaintiff two presumptions: 1) that it is not merely descriptive or generic; and 2) if it is descriptive that it has acquired secondary meaning.

*Id.*; *see also* 15 U.S.C. § 1115(a). A defendant, however, may overcome these presumptions, and demonstrate that the mark is invalid. *Packman*, 267 F.3d at 638-39.

In addition to attacking the validity of the mark, a defendant may also present a "fair use" defense. To prevail on a fair use defense, a defendant must establish that: 1) it did not use the mark as a trademark; 2) the use is descriptive of its goods or services; and 3) it used the mark fairly and in good faith. *Id.* at 638; 15 U.S.C. § 1115(b)(4). The fair use defense is based on the principle that a party may not appropriate descriptive language through trademark registration. *Id.* Transunion moves for summary judgment on its "fair use" affirmative defense and also on its counterclaim, in which it asserts that the Plaintiffs' mark is not protectable because it is merely descriptive and lacks secondary meaning.

### A. Fair Use

#### 1. Use as Trademark

A trade or service mark serves to convey a positive message concerning a particular product or service, setting it apart from other products or services in the marketplace and associating it with a single source. *M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980). A word or phrase functions as a trademark when a person uses it to identify itself to the public as the source of its product and to create public awareness of the uniqueness of the source and its product. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992). For example, the manufacturer of Gatorade used the phrase "thirst aid" as a trademark in a dispute over the manufacturer's fair use of that phrase. *Id.* at 953-54. The manufacturer used the phrase "thirst aid" as the most prominent feature of its advertising, included the statement "Gatorade is thirst aid," and relied on the rhyming quality of the phrase and its product to create a "memorable slogan that was uniquely associated with [the manufacturer's] product." *Id.*

4

Where a slogan or phrase does not serve to create an association in the public mind between the product and its source, courts have held that the phrase is not being used as a mark. For example, words and phrases like "the joy of six," "platinum," or "I love you," do not identify the Chicago Tribune Company, Platinum Home Mortgage Corporation, WOKY, Inc. (a radio station), respectively, as the source of the services or products, and courts found none of them to operate as marks. *Packman*, 267 F.3d at 640; *Platinum Home Mortgage Corp. v. Platinum Fin. Group*, 149 F.3d 722, 728 (7th Cir. 1998); *M.B.H. Enterprises, Inc.*, 633 F.2d at 55.

The Plaintiffs insist that Transunion used the phrase "Always know where you stand" as a mark primarily because it displayed the phrase prominently in its advertisement — setting it apart from other language in the advertisements. The Plaintiffs argue, therefore, that Transunion's use of that phrase in fact performed the function of a service mark. The Plaintiffs' argument, however, both misrepresents the undisputed facts and misinterprets the law.

First, the Plaintiffs' argument that the "lettering, type style, size, visual placement and prominence of the phrase" within Transunion's advertisement indicates its intent to use the phrase as a service mark. Plaintiffs are correct that Transunion displays the phrase "always know where you stand" by itself in the advertisement. The undisputed facts, however, demonstrate that the phrase appears in conjunction with a companion phrase, "especially with your credit," which appears on the screen less than a second after the trademarked phrase. The combined phrases remain on display for several seconds. They appear during the middle of the advertisement and appear only then. By contrast, Transunion displays its actual mark several times during the advertisement. Further, the undisputed facts demonstrate that the size and font of the text is the same as other phrases in the advertisement, such as "especially with your credit," "fight the unexpected," and "Get all 3 of your credit scores." See

5

Pl. Ex. 3. Quite simply, nothing about Transunion's use of "always know where you stand" sets it apart from many other phrases it uses within the advertisement.

Second, the Plaintiffs' argument is premised largely upon their belief that merely displaying a phrase prominently is sufficient to reveal an intent to use the phrase as a mark. But *Packman* and *Sands, Taylor & Wood* stand for no such proposition. In *Packman*, a newspaper company used another's trademarked phrase "the joy of six" as a headline to promote the Chicago Bulls' sixth NBA Championship. *Packman*, 267 F.3d at 632-33. The prominence of the headline, however, did not suggest that the newspaper intended to use the phrase as a trademark. *Id.* at 640. Rather, the newspaper used its well-known masthead to identify the source of the product. *Id.* On the other hand, in *Sands, Taylor & Wood*, the manufacturer did more than prominently display the trademarked phrase. *Sands, Taylor & Wood Co.*, 978 F.2d at 953-54. Instead, it used "thirst aid," the trademarked phrase, to create a rhyme with its own trademark and displayed the phrase prominently with its own trademark to create the impression that it was the source of "thirst aid." *Id.*

That is not the case here. There simply is nothing about the phrase "always know where you stand," by itself, that identifies Transunion as the entity that could help consumers know where they stand. Nor is there anything about Transunion's use of that phrase that creates awareness in the public as to the uniqueness of the service Transunion offers or identifies Transunion as the source of that service. Rather, it merely describes a part of the services that Transunion offers.

### 2. Descriptiveness

A descriptive term ordinarily names a characteristic of a product or service. *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759; *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:16 (4th ed. 2007). Descriptive terms "impart information directly."

*M.B.H., Enters., Inc.*, 633 F.2d at 54. The Plaintiffs argue that it requires some operation of the imagination to connect the phrase "always know where you stand" with Transunion's credit monitoring service, and therefore Transunion has used the phrase suggestively and not descriptively. The Plaintiffs' argument is threadbare, at best.

The Plaintiffs first assert that Transunion's use of the phrase is suggestive because it uses the phrase in the midst of an advertisement featuring humorous mishaps that require the viewer to imagine the connection to Transunion's product or service. The Plaintiffs then argue that no consumer would know whether the advertisement promoted credit cards, debt relief, or a bankruptcy law firm. The Court disagrees.

First, the mere fact that the advertisement employs humor does not necessarily mean that viewers must "imagine" a connection between the phrase and Transunion's product or service. Rather, the advertisement employs humor as a hook to ensure that the viewer watches the add. Nor does the fact that an advertisement has no direct relationship to the product or service being offered mean that the word or phrase is not used descriptively. *See M.B.H. Enters, Inc.*, 633 F.2d at 55; *Sands, Taylor, & Wood, Co.*, 978 F.2d at 952. The question for the Court is not whether the phrase actually identifies Transunion's product, but whether the phrase directly imparts information about that product. *M.B.H. Enters, Inc.*, 633 F.2d at 55; *see also* J Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:16 (4th ed. 2007) (noting that the test to determine whether a term is descriptive is not whether the one can guess from the mark itself, in a vacuum, what the goods and services are, but whether when the mark is seen it conveys information about the nature of the goods or services, including the intended purpose, function or use of those goods or services).

For example, a radio station that advertised that it "loved" the City of Milwaukee used the word "love" descriptively, even though the word "love" did not have any direct relationship to the radio station's services. *M.B.H. Enters., Inc.*, 633 F.2d at 55. Rather, its use of "love" imparted direct information about its commitment to civic involvement. *Id.* In doing so, it used the word "love" in its ordinary, descriptive sense. *Id.* Similarly, using the headline "joy of six" did not alert consumers whether a newspaper, a book, or a t-shirt was being hawked. *Packman*, 267 F.3d at 641. Instead, the phrase described a "newsworthy event and the happiness associated with the Bulls' sixth NBA championship." *Id.* It was a phrase commonly used to describe emotions associated with multiples of anything. *Id.* On the other hand, marks that are suggestive create an incongruous or figurative association between product and mark that require the consumer to use imagination to link the product to the mark. *Sands, Taylor, & Wood Co.*, 978 F.2d at 953. A classic example of a suggestive mark is "Tide," which requires imagination to link the product with soap or some characteristic of soap. *Id.*

In this case, Transunion's advertisement urges consumers to "always know where they stand, especially with [their] credit." The phrase thus describes the benefit or purpose of "knowing where you stand" with your credit history. A simple reference to the dictionary reveals that Transunion used the phrase in its common, descriptive sense. *See* Def. 56.1(a) Statement Ex. D, at Exs 139-141); *M.B.H. Enters, Inc.*, 633 F.2d at 55 n.6 (using dictionary definition to evaluate descriptiveness). To know where one stands, is to "know how someone feels about your or what you are allowed to do in a particular situation." *Longman Dictionary of Contemporary English, available at,* http://www.ldoceonline.com/dictionary/stand_1. And "to stand" also means "to be in a particular state or situation." *Webster's New International Dictionary* 2223 (3rd Ed. 1986); *see also Longman Dictionary of Contemporary English, available at,* http://www.ldoceonline.com/dictionary/stand_1

8

(explaining use of "stand" in phrase "where do things stand" to ask what is happening in a particular situation).

Transunion has used the phrase "always know where you stand" to encourage consumers to be aware of their financial situation. As such, it has described the intended purpose of its credit monitoring service. No flight of imagination or keen logical insight is required to understand the link between the phrase "always know where you stand" and the benefit of monitoring one's credit. The Court holds that Transunion has used the phrase descriptively.

### 3. Good Faith

The good faith prong of the fair-use defense requires that the defendant use the phrase fairly and in good faith to describe their goods and services and not in an effort to infringe on a competitors trademark. *Sands, Taylor, & Wood, Co.*, 978 F.2d at 951. The Plaintiffs make no real argument that Transunion has not demonstrated good faith, simply suggesting that it has put forward no evidence of its subjective intent in using the phrase.

At the outset, the Court notes that a defendant need not demonstrate that it lacked knowledge of the trademark to demonstrate that it acted in good faith. *Packman*, 267 F.2d at 642. Here, Transunion used the phrase in the midst of an advertisement in which it prominently and repeatedly used its own trademark. *Cf. Packman*, 267 F.3d at 642 (evidence that defendant used its trademarks to identify itself as a source suggests that it did not act in bad faith with the intent to confuse the public about the source of a mark). Further, it used the phrase descriptively and in connection with a second phrase, "especially with your credit." The Plaintiffs, on the other hand, used the mark in connection with another mark, "Total Quality Litigation," which Transunion did not use in their advertisement. The Court holds that the undisputed facts demonstrate that Transunion did not use the phrase "Always

know where you stand" with any intent other than to promote its credit monitoring service and certainly not with any intent to create confusion as to the source of the mark.

Consequently, the Court holds that the undisputed facts demonstrate that Transunion fairly used the phrase "always know where you stand" and GRANTS its motion for summary judgment on the Plaintiffs' claim.

### B. Protectability

Transunion also asks the Court to order the Patent and Trademark Office (PTO) to cancel the Plaintiffs' mark, pursuant to 15 U.S.C. § 1119. Although Transunion could petition the PTO for cancellation under 15 U.S.C. § 1064, nothing in the Lanham Act requires them to follow that course. *See Central Mfg. Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). Section 1119 gives federal district courts the power to update the federal trademark register, and "where a mark is shown to be invalid, cancellation is not merely appropriate, it is the best course." *Id.* (citing 15 U.S.C. §§ 1064, 1119).

A registered trademark carries a presumption of validity. 15 U.S.C. § 1115(a). If such a mark is not contested for five years, the mark becomes "incontestable," though alleged infringers can assert specific challenges to the mark as affirmative defenses. 15 U.S.C. § 1065; 15 U.S.C. § 1115(b). Here, the Plaintiffs' had registered the mark for less than three years prior to this suit. Thus, the mark is not incontestable, though it is entitled to a presumption of validity.

Marks are either fanciful, arbitrary, suggestive, descriptive or generic. *H-D Michigan, Inc.*, 496 F.3d at 759. A seller cannot appropriate as the name of its brand a term that describes the product to the public — for then other sellers would have difficulty describing similar products and competition would be impaired. *Custom Vehicles, Inc.*, 476 F.3d at 483. In other words, a seller cannot hijack the English language. *Id.* Thus, descriptive marks ordinarily cannot function as trademarks. *H-D*

*Michigan, Inc.*, 496 F.3d at 759; *Custom Vehicles, Inc.*, 476 F.3d at 483. If a descriptive mark has acquired secondary meaning — a term that the public uniquely associates with the seller — then a seller can still protect a descriptive mark. *Custom Vehicles, Inc.*, 476 F.3d at 483.[1]

Transunion argues that the mark is descriptive and therefore not entitled to protection. The Plaintiffs argue that the mark is at least suggestive. As noted earlier, a descriptive mark is one that describes some characteristic or quality of the good or service being offered. *M.B.H. Enters., Inc.*, 633 F.2d at 55. Transunion points to the myriad of companies that use similar phrases to advertise legal services, credit monitoring services, and financial or real estate services to support its assertion that the mark is descriptive. Transunion assets that each of these companies uses the phrase "always know where you stand" to describe the purpose, utility, or effectiveness of the various service being offered. The Plaintiffs, on the other hand, argue that the fact that the phrase "always know where you stand" is used by law firms, credit monitoring corporations, and financial or real estate companies indicates that the mark does not directly impart information — particularly about services offered by law firms.

The Court disagrees. The Seventh Circuit has observed that the continuum between generic, descriptive and suggestive marks is fluid and depends highly on the context in which the mark is used. *See, e.g., H-D Michigan, Inc.*, 496 F.3d at 759-61; *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 497 (7th Cir. 2001); *Platinum Home Mortgage Corp.*, 149 F.3d at 727-28. A word or phrase can be generic or descriptive when used in one industry or to describe a particular product, but suggestive

---

[1] In its brief, Transunion seems to imply that it overcomes the presumption of validity simply by presenting evidence that the mark is descriptive and that the Plaintiffs must establish secondary meaning in order to avoid summary judgment. (Def. Br. at 12-13). In the case of a registered descriptive mark, the presumption of validity means that there is a presumption that the mark has acquired secondary meaning. *Custom Vehicles, Inc.*, 476 F.3d at 485. Therefore, Transunion bears the burden of demonstrating that the mark lacks secondary meaning.

11

or even arbitrary when used in other industries or contexts. "Apple," for example, would be generic if used by a company that produces apples. It is arbitrary, however, when used by a company that manufactures computers. *Custom Vehicles, Inc.*, 476 F.3d at 486. "Hog" may be generic when used to describe a motorcycle, but descriptive when used to describe a group of motorcycle owners. *H-D Michigan, Inc.*, 496 F.3d at 759-61. Sometimes common usage within an industry suggests that a mark that might otherwise be considered suggestive is actually descriptive. For example, "platinum" is descriptive when used by a company in the financial-services industry. Even though, literally, it is only suggestive of a high degree of quality or elegance, its use is so common-place in describing financial products that it functions as a descriptive mark. *Platinum Home Mortgage Corp.*, 149 F.3d at 727-28. Similarly, "bliss" is not suggestive when used in relationship to salon products because so many producers of these products use the word to describe the intended benefit of their products. *Bliss Salon Day Spa*, 268 F.3d at 497.

The Plaintiffs suggest that no consumer will hear (or see) the phrase "always know where you stand" and understand that the phrase promotes legal services. But, as noted earlier, a descriptive term need not cause a consumer to guess what product or service is being advertised in a vacuum. Rather, a descriptive term is one, when seen in context, conveys information about the nature of the goods or services, including the intended purpose or function of those goods or services. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:16 (4th ed. 2007). The Plaintiffs do not dispute the fact that numerous law firms promote their firms' efficiency at handling legal matters by advising prospective clients that they will know where they stand if they employ that firm. The mental leap for the consumer to understand the advantages of knowing where they stand is almost instantaneous, and cannot be pigeon-holed into the suggestive cubby. The use of the phrase "always know where you

stand" is so commonplace with the legal services industry it cannot be inherently distinctive. Rather, it describes an intended benefit of employing a particular firm. The simple fact that the phrase is common place in other industries does not change the equation. Rather, it tends to suggest that the phrase even further lacks distinctiveness. The Court holds that the phrase, "always know where you stand," when used to promote legal services is descriptive and not suggestive. Thus, to be valid, the Plaintiffs' mark must have acquired secondary meaning.

Secondary meaning is a mental association in consumers' minds between the alleged mark and a single source of a product. *Packman*, 267 F.3d at 641. It exists only where it signifies to consumers a single brand. *Custom Vehicles*, 476 F.3d at 483. Evidence of heavy advertising or large sales may demonstrate that a mark has acquired secondary meaning. *Id.* Conversely, evidence that a company has not exclusively used the mark in association with its goods and services indicates that a descriptive term has not acquired secondary meaning. *Platinum Home Mortgage Corp.*, 149 F.3d at 727-28.

The undisputed evidence demonstrates that the Plaintiffs have used the mark for less than three years, do not use it in television or radio ads. They do not even use it on their own letterhead or business cards. They use it only on their website and in direct mailings. Moreover, the undisputed evidence further demonstrates that numerous other legal firms use the mark and that many credit monitoring corporations and financial services corporations also use the mark. Given these undisputed facts, the Plaintiffs cannot establish that the mark has acquired secondary meaning (and they make no argument that it has).

For the foregoing reasons, the Court holds that the mark is descriptive and lacks secondary meaning and therefore is not protectable. The Court GRANTS Transunion's Motion for Summary Judgment on its counterclaim and pursuant to 15 U.S.C. § 1119 orders the Director of the Patent and

Trademark Office to cancel the Plaintiffs' registration of the trademark "Always know where you stand."

IT IS SO ORDERED.

9/1/10
Dated

Hon. William J. Hibbler
U.S. District Court